UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**BRIAN BRUCE,**

    **Plaintiff,**

    v.                                            Case No. 2:13-cv-636
                                                    JUDGE SMITH
                                                    Magistrate Judge Kemp

**SHERIFF ANDREW SMITH,** *et al.***,**

    **Defendants.**

**OPINION AND ORDER**

    This matter is before the Court upon Defendant Andrew Smith's Motion for Summary Judgment (Doc. 18). For the reasons that follow, Defendant's motion is **GRANTED**.

**I.    FACTUAL BACKGROUND**

    Bruce's claims center on a five-day period of time in which he was incarcerated at the Logan County Jail. Bruce asserts that during his incarceration, employees of the Logan County Sheriff's Office denied him access to a phone, violating various provisions of the Ohio Revised Code, the Ohio Constitution, and the Constitution of the United States. For efficiency purposes, the Court will present the factual background of this case in the form of a timeline, beginning with Bruce's initial arrest.

--------

*Saturday, June 9, 2012*

Early Morning:  Around 12:45 a.m., a Logan County Sheriff's Office deputy initiated a traffic stop on Bruce's vehicle, after seeing Bruce drive left of center. (Doc. 18, Ex. 2,

Brown Aff., at ¶ 10).  Thereafter, Bruce was arrested on an outstanding Domestic Violence warrant and new charges of Improperly Handling a Firearm in a Motor Vehicle, Operating a Vehicle While Intoxicated, Resisting Arrest, and Driving Left of Center. (*See id*. at ¶¶ 17, 30).  Bruce does not recall whether deputies at the jail offered him the opportunity to make a phone call during the booking process. (*See* Doc. 16, Bruce Depo., at 31).

*Monday, June 11, 2012*

Morning: Bruce was arraigned in Bellefontaine Municipal Court on the Domestic Violence charge. (*See id*. at 34-35).  At the hearing, the Court informed Bruce that (1) he had the right to have an attorney represent him in the case; (2) he had the right to continue the hearing in order to speak with an attorney before entering a plea; (3) if he could not afford an attorney, the Court would consider appointing one for him; (4) he had the right not to testify against himself; and (5) he had the right to a jury trial. (Doc. 18, Ex. 3, Transcript, at 2-3).  Bruce did not expressly invoke his right to an attorney or request any delay in the proceedings.  (*Id*. at 3).  At the hearing, Bruce made no mention of the jail precluding him from making a phone call.  (*See id*., *passim*).

Afternoon: Bruce first requested to use a phone at the jail on Monday afternoon, following his court hearing.  (*See* Bruce Depo. at 36).  Bruce needed to contact his employer, who had a strict no-call, no-show termination policy. (*Id*. at 39-41).  In response to his request, an unidentified deputy told him that they would "take care of [him]" as soon as they could "get things calmed down here and get everybody back in the cells." (*Id*. at 36).  Later that afternoon, Bruce also asked a fellow

inmate to request a phone call on his behalf. (*Id*. at 37-38). Bruce was never given access to a phone on Monday.

*Tuesday, June 12, 2012*

Morning: Bruce again requested access to a phone in order to contact his employer. (*Id*. at 38). An unidentified deputy responded in the same manner the other guard had on Monday: "[O]nce we get everybody settled down, or, you know, get done with meals, meds, we'll get you out of here." (*Id*. at 38).

Afternoon: A friend and co-worker of Mr. Bruce visited him in the jail. (*Id*. at 39). He reminded Bruce of his obligation to call in to work. (*Id*. at 40). Bruce asked his co-worker to contact his attorney and brother, but did not ask him to contact Honda, as he was afraid doing so would place both of their careers in jeopardy. (*Id*. at 40-42).

Evening: A fellow inmate again requested access to a phone on Bruce's behalf. Another unidentified deputy told the inmate not to worry "about his [expletive] phone call" and that they would "take care of him." (*Id*. at 43-44). Bruce was never given access to a phone on Tuesday.

*Wednesday, June 13, 2012*

Morning: Bruce met with his attorney, who his co-worker had contacted, at the jail. (*Id*. at 49). During this meeting, Bruce met Sheriff Smith for the first time. (*Id*. at 50). Bruce's attorney asked Sheriff Smith whether there was any reason Bruce couldn't place a phone call from the jail. (*Id*. at 50). Sheriff Smith shrugged his shoulders and said, "[N]o, there's no reason why he shouldn't." (*Id*. at 51). This

|  |  |
|---|---|
|  | brief conversation was the first and last time Bruce saw or interacted with Sheriff Smith during his incarceration. (*Id*. at 50-51). |
| Afternoon: | Bruce was transferred from his holding cell to a "dormitory-style type cell." The "dorm" had a phone that all inmates could freely access. (*Id*. at 45-46). Bruce immediately attempted to call his employer, but could not connect with anyone at the company. (*Id*. at 46-49). After Bruce unsuccessfully called his employer, he made no further calls as he "had already spoken to [his attorney] earlier that day" and "didn't have any other people to call." (*Id*. at 49). |
| Evening: | Bruce asked an unidentified deputy to use a phone outside of the "dorm" to try to contact his employer again. She responded, "[O]h, you're the one the Sheriff told us we had to give you a phone call." (*Id*. at 52). The deputy said she would accommodate Bruce after she "[got] her stuff done," but never returned. |

*Thursday, June 14, 2012*

|  |  |
|---|---|
| 1:30 a.m.: | An unidentified deputy allowed Bruce to use a phone outside of the "dorm." (*Id*. at 57). He was able to contact his employer. (*Id*.). |
| Afternoon: | Bruce was released from jail on a recognizance bond. (*Id*.). |

--------

At some point after his release, Bruce's employer conducted a hearing in which a three-member panel decided to terminate his employment. (*Id*. at 57-60). Bruce subsequently filed suit against Sheriff Andrew Smith and several unidentified Logan County Sheriff's Office deputies for damages stemming from the Defendants' alleged actions in denying him access to a telephone. Sheriff Smith has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on two grounds. Sheriff Smith first argues he is qualifiedly and

4

statutorily immune from all of Bruce's claims. Second, he asserts Bruce has failed to "allege a cognizable claim under either federal or state law." (Doc. 18, Def.'s Mot. Summ. J., at 1).

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's purpose in considering a summary judgment motion is not "to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists if the Court finds a jury could return a verdict, based on "sufficient evidence," in favor of the nonmoving party; evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249-250.

A party seeking summary judgment shoulders the initial burden of presenting the court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). Alternatively, the moving party can "merely rely upon the failure of the nonmoving party to produce any evidence which would create a genuine dispute for the jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (after burden shifts, nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury"). In

considering a motion for summary judgment, the Court must "afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party." *Id*. However, a nonmoving party cannot rely solely on this favorable construction; he or she must present affirmative evidence showing more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cox*, 53 F.3d at 150 ("[T]he nonmoving party must present affirmative evidence to defeat a properly supported motion for summary judgment."). The Court cannot rely solely on an adverse party's failure to respond in granting summary judgment, however. Rule 56(e) of the Federal Rules of Civil Procedure states that when the adverse party does not respond to a summary judgment motion, "summary judgment, *if appropriate*, shall be entered against the adverse party." Fed. R. Civ. P. 56(e) (emphasis added). Thus, even absent a response, the Court must still consider Sheriff Smith's motion on the merits to determine whether he is indeed entitled to judgment as a matter of law.

### III. DISCUSSION

Bruce filed a Complaint against Sheriff Andrew Smith and six unnamed defendants, all "unknown deputies/corrections officers," alleging both state and federal claims. Specifically, Bruce asserts violations of Ohio Revised Code Sections 2935.14 and 2935.20, Sections 9 and 10 of Article 1 of the Ohio Constitution, and the Sixth and Fourteenth Amendments of the United States Constitution. Sheriff Smith asserts he is entitled to summary judgment on all of Bruce's claims. The Court will first address Sheriff Smith's arguments in relation to Bruce's federal claims. If necessary, the Court will then consider the merits of Bruce's state law causes of action. Finally, the Court will address Bruce's claims as they concern the six yet-to-be identified defendants to this action.

**A.     Federal Claims**

In his Complaint, Bruce alleges Sheriff Smith violated his rights under the Sixth and Fourteenth Amendments "by depriving him of his right to have the assistance of counsel." (Doc. 2, Compl., at ¶ 33).  While not explicitly indicated in his Complaint, the Court presumes Bruce brings this action pursuant to 42 U.S.C. § 1983, the statutory avenue that provides a federal forum for civil rights claims.  The factual basis for Bruce's assertion appears to be that, "despite repeated requests," Sheriff Smith never allowed or "afforded [him] his right to make a telephone call or contact his attorney." (*Id*. at ¶ 16).  Sheriff Smith argues he is entitled to qualified immunity on Plaintiff's federal claims because (1) he was never personally involved in the actions (or inaction) that allegedly caused Bruce injury; and (2) even if he was involved in some capacity, there was no violation of Bruce's clearly established constitutional rights.

    **1.     Qualified Immunity: General Standard and Burden of Proof**

In determining whether qualified immunity applies, the Sixth Circuit has undertaken both two-step and three-step analyses.  The two-prong framework requires the court to determine whether (1) the defendant-official violated a known constitutional right, and (2) whether that constitutional right "was so clearly established at the time in question that a reasonable official in the defendant's position would have known that he was violating the plaintiff's constitutional rights." *Gregory v. City of Louisville*, 444 F.3d 725, 745 (6th Cir. 2006) (quoting *Hutsell v. Sayre*, 5 F.3d 996, 1003 (6th Cir. 1993).  The three step approach is substantively similar:  First, the court determines whether a constitutional violation has occurred. *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003). Second, the court asks whether "the violation involved a clearly established constitutional right of which a reasonable person would have known." *Id*.  Third, the court determines whether the plaintiff "has offered sufficient evidence 'to indicate that what the

7

official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.'" *Id.* (quoting *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999)).

Although the three-step approach, by its very name, implies an additional element, in many cases, the final step is just a reiteration of the second. See *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005) (explaining that while "the three-step approach may in some cases increase the clarity of the proper analysis," in many contexts, "the fact that a right is 'clearly established' sufficiently implies that its violation is objectively unreasonable"). As both approaches "are consistent with Supreme Court precedent," courts have the discretion to proceed under either framework. *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013). Most recently, this Court chose to employ the two-step qualified immunity approach, *see Gross v. Vill. of Minerva Park Vill. Council*, No. 2:12-CV-12, 2014 WL 467337 (S.D. Ohio Feb. 5, 2014) (Smith, J.), and, for purposes of consistency, elects to do so again here.

The Court notes that when a government official asserts the defense of qualified immunity in the context of a summary judgment motion, a rather untraditional burden shift occurs. Even though the defendant-official is the movant, it is the plaintiff that carries the burden to (1) state a claim alleging the violation of clearly established law and (2) present evidence "sufficient to create a genuine issue as to whether the defendant in fact committed the acts that violated the law." *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994). The defendant-official is not without obligation, however; he maintains the traditional burden of showing that no genuine issues of material fact remain to defeat his claim of qualified immunity. *Hoard v. Sizemore*, 198 F.3d 205, 211 (6th Cir. 1999).

In light of the above, the first prong of the two-step qualified immunity analysis requires the Court to determine whether Bruce has presented sufficient evidence that Sheriff Smith

8

violated one or more of his constitutional rights. Thus, the Court will begin its analysis with this inquiry, i.e. whether Bruce has stated a valid claim under 42 U.S.C. § 1983.[1]

### 2. Section 1983 Liability

The aim of 42 U.S.C. § 1983 is to "deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *McKnight v. Rees*, 88 F.3d 417, 419 (6th Cir. 1996). Generally, to establish a § 1983 claim, a plaintiff must show that the defendant deprived him of a right guaranteed by the United States Constitution or laws while acting under color of state law. *Austin v. Diaz*, 194 F.3d 1311 (6th Cir. 1999). Thus, in most cases, a defendant's personal involvement in the challenged action is a necessary component of a plaintiff's § 1983 claim.[2] *McCoy v. Celeste*, 836 F.2d 1348 (6th Cir. 1988) (dismissal warranted when "plaintiffs failed to establish the personal involvement of any of the defendants in the challenged conduct"); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (to sustain a § 1983 claim, plaintiff must show that "each Government-official defendant, through the official's own individual actions, has violated the Constitution"). It should be noted, however, that *personal* involvement does not necessarily mean *direct* involvement; an official can be liable for encouraging another to commit an unconstitutional act or failing to intervene after personally observing another violating an individual's constitutional rights. *See Belamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (recognizing that a supervisor can be liable for the acts of his employees if he encouraged or otherwise participated in the specific incident of misconduct); *Turner v. Scott*, 119 F.3d 425, 429

---

[1] The Court acknowledges that it is not bound to consider this prong first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that courts were not bound to a rigid sequential qualified immunity analysis). However, the Court, in its discretion, finds that doing so would be beneficial and appropriate in this case.

[2] There are, of course, exceptions to this general rule such as when a plaintiff alleges an agent of the defendant-official or defendant-municipality acted pursuant to an official policy or custom. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-95 (1978). However, Bruce has not alleged a *Monell* claim nor any facts or evidence that could remotely be construed as such.

(6th Cir. 1997) (noting that official could be liable for failing to intervene if he observed or had reason to know that excessive force was being used by another officer). A corollary to this general principle is that a plaintiff cannot sustain a § 1983 claim against a supervisory official based solely on the theory of *respondeat superior* or the official's right to control his employees; liability will only be imposed if plaintiff can demonstrate that the official "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Belamy*, 729 F.2d at 421.

Even after construing all reasonable inferences in his favor, the Court finds that Bruce has not presented sufficient evidence to sustain a cognizable § 1983 claim against Sheriff Smith. In his affidavit, Sheriff Smith avers he did not "deny Brian Bruce the use of a telephone" or "order or direct any employee to deny Brian Bruce use of a telephone." (Doc. 18, Ex. 1, Smith Aff., at ¶¶ 4-5). Bruce has not submitted any evidence to refute these sworn statements or to show that Sheriff Smith was either directly or indirectly involved in the alleged violation. More significant than this omission, though, is Bruce's admission: in his deposition, Bruce unequivocally stated that during his incarceration, Sheriff Smith never denied Bruce the ability to make a phone call. (*See* Bruce Depo. at 51). Bruce also admitted that the first time he ever saw or interacted with Sheriff Smith was Wednesday—the day before he was released. (*See id*. at 50). During this interaction, Bruce did not directly ask Sheriff Smith to make a phone call or inform him that various jail employees had been ignoring his requests to access a phone. Nonetheless, the record indicates that after Sheriff Smith became at least tangentially aware of the situation on Wednesday morning, he encouraged other officers to accommodate, not ignore, Bruce's requests; Bruce testified that when he confronted a deputy about making a phone call later that day, the deputy responded, "[O]h, you're the one the Sheriff told us we had to give you a phone

10

call." (*Id*. at 52). Further, on Wednesday afternoon, Bruce was transferred to a dormitory-style cell where he had open access to a telephone. (*Id*. at 45-46).

The Court in no way condones the actions of the unidentified corrections officers, who, through flippant disregard, hindered Bruce's earnest attempts to save his employment. However, the corrections officers' lack of empathy is not at issue here. Whether Sheriff Smith can be held liable on Bruce's § 1983 claim rests on one inquiry alone: did Sheriff Smith deprive Bruce of his Sixth or Fourteenth Amendment rights, either personally or by otherwise encouraging or actively participating in the action, while acting under color of state law? For the reasons outlined above, the Court finds he did not.

The Court therefore finds that Bruce has failed to meet his burden to show that Sheriff Smith violated any of his constitutional rights. The Court further finds, based on the evidence presented, that no genuine issues of material fact exist and that Sheriff Smith is entitled to judgment as a matter of law on Bruce's federal claims. As these findings are dispositive of Bruce's federal law claims against Sheriff Smith, the Court need not consider the final prong of the qualified immunity framework.

**B.     State Law Claims**

Bruce also asserts Sheriff Smith violated various provisions of the Ohio Revised Code and the Ohio Constitution. The only basis for federal subject matter jurisdiction over these state law claims appears to be through supplemental jurisdiction. However, the Court has granted Sheriff Smith summary judgment on all claims over which it had original jurisdiction, i.e. Bruce's federal constitutional claims.[3] Therefore, the Court declines to exercise supplemental

---

[3] The Court recognizes that, in addition to the federal claims asserted against Sheriff Smith, Plaintiff's Complaint includes federal causes of action against six unnamed defendants. However, for reasons set forth in Section C, the Court finds dismissal of these claims is also warranted. Therefore, this Opinion and Order effectively disposes of all of Bruce's federal claims against all defendants, named and unnamed alike.

jurisdiction over Bruce's remaining state law claims—a decision that is both authorized by statute and recommended by the Sixth Circuit. *See* 28 U.S.C. § 1367(c)(3); *Taylor v. First of Am. Bank-Wayne,* 973 F.2d 1284, 1287 (6th Cir. 1992). Bruce's state law claims against Sheriff Smith are dismissed without prejudice.

**C.     Claims against John Does 1-4 and Jane Does 5-6**

In his Complaint, Bruce also alleged claims against six "unknown deputies/corrections officers" for violations of Ohio Revised Code Sections 2935.14 and 2935.20, Sections 9 and 10 of Article 1 of the Ohio Constitution, and the Sixth and Fourteenth Amendments of the U.S. Constitution. (*See* Doc. 2, Compl.). To date, these parties remain unidentified.

In its Pretrial Memorandum, the Court made clear that any motion to amend the pleadings or to join parties "shall be filed by November 1, 2013." (Doc. 7, Pretrial Memo., at ¶ B). Further, the Court awarded the parties over seven months to conduct discovery. (*Id.*, at ¶ E (establishing discovery deadline of May 1, 2014)). Bruce therefore knew that he needed to ascertain the identities of these unknown corrections officers by November 1, 2013, or at the very latest, May 1, 2014. Yet, in the 13 months this case has been pending, Bruce has made no efforts to amend his Complaint or identify any of these defendants. "Because discovery has been closed and plaintiff has failed to identify John Doe, these claims must be dismissed." *Hunter v. Trussel*, No. 2:03-CV-00972, 2006 WL 1209374, at *4 (S.D. Ohio May 2, 2006) (Graham, J.). Accordingly, the Court orders all causes of action asserted against John Does 1-4 and Jane Does 5-6 be dismissed without prejudice.

## IV.     CONCLUSION

For the reasons stated above, the Court finds that Sheriff Smith is entitled to judgment as a matter of law as to all of Plaintiff Brian Bruce's federal claims pursuant to Rule 56 of the

Federal Rules of Civil Procedure.  Defendant Andrew Smith's Motion for Summary Judgment is therefore **GRANTED** as to Plaintiff's federal claims.  The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against Sheriff Smith.  All of Plaintiff's state law claims against Defendant Andrew Smith are therefore **DISMISSED** without prejudice.

The Court further **DISMISSES** without prejudice all of Plaintiff's state and federal claims against unnamed defendants John Does 1-4 and Jane Does 5-6.

The Clerk shall **REMOVE** Document 18 from the Court's pending motions list.

The Clerk shall **REMOVE** this case from the Court's pending cases list.

   **IT IS SO ORDERED.**

            */s/ George C. Smith*

            **GEORGE C. SMITH, JUDGE**
            **UNITED STATES DISTRICT COURT**